UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BOBBY LEE STOKES,

    Plaintiff,

v.                                                                    CASE NO. 3:14-cv-350-J-MCR

CAROLYN W. COLVIN, Commissioner
of the Social Security Administration,

    Defendant.
_____/

### MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for a period of disability and disability insurance benefits ("DIB"). Plaintiff alleges he became disabled on January 15, 2012. (Tr. 21, 69.) A hearing was held before the assigned Administrative Law Judge ("ALJ") on April 2, 2013, at which Plaintiff was represented by an attorney. (Tr. 36-100.) The ALJ found Plaintiff not disabled from January 15, 2012 through May 16, 2013, the date of the decision.[2] (Tr. 21-31.)

In reaching the decision, the ALJ found that Plaintiff had the severe impairments of a history of chronic low back pain aggravated by his weight, a history of morbid obesity, and a history of hypertension. (Tr. 23.) The ALJ also

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Docs. 18, 19.)

[2] Plaintiff had to establish disability on or before June 30, 2015, his date last insured, in order to be entitled to a period of disability and DIB. (Tr. 21.)

found that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work. (Tr. 24.)

Plaintiff is appealing the Commissioner's decision that he was not disabled from January 15, 2012 through May 16, 2013. Plaintiff has exhausted his available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **AFFIRMED**.

I. **Standard of Review**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into

account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

Plaintiff raises three issues on appeal. First, Plaintiff argues that the ALJ erred in determining that Plaintiff had the RFC to perform a reduced range of light work in light of Dr. Lynn Harper-Nimock's opinions allegedly suggesting greater limitations. Plaintiff further argues that the testimony of the Vocational Expert ("VE") does not constitute substantial evidence to support the ALJ's decision because the ALJ's hypothetical question to the VE did not adequately reflect Plaintiff's limitations. Finally, Plaintiff argues that the ALJ erred in weighing his credibility. For the reasons stated herein, the Court finds that the ALJ's decision is supported by substantial evidence.

### A.   The ALJ's Decision

The ALJ found that Plaintiff had the RFC to perform light work[3] with the following additional limitations:

> The claimant cannot climb ropes, ladders and scaffolds; he must avoid working in proximity to unprotected heights and moving

---

[3] By definition, light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; it requires a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b); SSR 83-10.

> machinery and he must avoid temperature extremes. The claimant can do other postural activities (i.e., bend, balance, stoop, squat, crouch, crawl, or kneel) occasionally. In consideration of SSR 02-01p, the claimant requires a sit/stand option due to his morbid obesity and thus he can only sit, stand and walk for 4 hours each a day, alternating his position between sitting and standing/walking every 30 minutes.

(Tr. 24.)

The ALJ stated:

> To begin, in reviewing pertinent medical history and treatment, the claimant alleges disability due to a history of various orthopedic related problems including arthritis in his knees, a back injury, borderline diabetes, high blood pressure, obesity, chest pain and difficulty breathing/shortness of breath (SOB) symptoms. Relevant to reviewing the claimant's medical history, the undersigned notes that the file reveals a distinct pattern of inconsistent compliance of prescribed treatment/medication, as well as irregular medical healthcare follow-up, as noted by multiple medical sources (Exhibits 5E, 2F, 3F/1, 5F and 6F/7).
>
> . . . Furthermore, the undersigned notes that the claimant has received consistent medical counseling regarding following a healthy diet, weight loss and lifestyle changes to help relieve his symptoms and manage/treat his overall health. Despite such health counseling, the evidence appears to demonstrate the claimant continued smoking and no efforts have been medically documented regarding successful weight loss management (Exhibits 2F, 3F, 5F and 7F).
>
> Next, in reviewing the severity of symptoms, the record does not contain objective lab data or positive clinical/medical findings suggesting that the claimant's impairments reach a level of severity to entirely preclude him from all work.

(Tr. 25.)

Then, after pointing to specific examples in the medical record, the ALJ stated:

> [T]he evidence suggests that, with regular ongoing treatment with a primary care provider in conjunction with medical counseling/medication compliance, the claimant may significantly alleviate and/or reduce his symptoms and limitations. Furthermore, the undersigned notes that although the claimant has received ongoing treatment for his impairments, such medical treatment has been essentially routine and conservative in nature with no medical recommendations for subsequent procedures.

(Tr. 26.) Further, the ALJ pointed out that despite Plaintiff's reported limitations at the hearing, he "also testified that he is able to lift/carry approximately 20 pounds; he sometimes engages in household chores such as cleaning and washing dishes; he regularly cooks breakfast on the stove and he takes short walks daily for exercise." (*Id.*) In addition, "contrary to his testimony, treating physician records report the claimant's blood pressure remains controlled with appropriate medication compliance (Exhibits 5F, 6F and 8F)." (Tr. 26.)

When evaluating the opinion evidence, the ALJ noted that "no treating physician specifically provided medical restriction or limitations for the claimant within a workplace environment." (*Id.*) Therefore, the ALJ considered the opinions of the State agency examining and non-examining consultants—Lynn Harper-Nimock, M.D. and Albert Ponterio, M.D., respectively. (Tr. 26-27.) The ALJ found "Dr. Harper-Nimock's medical source statements concerning the claimant's physical limitations overly broad and incongruent with the totality of the other objective evidence in this record (Exhibits 2F, 3F/5, 5F/2-4, 6F/6 and 7F/8-9)," and, therefore, accorded those opinions "limited weight." (Tr. 27.) In

contrast, the ALJ found "Dr. Ponterio's medical source statements consistent with the evidence of record in its entirety," and accorded them "more weight." (*Id.*)

Then, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "not fully credible" for the reasons explained in the decision. (*Id.*) The ALJ noted that "the medical evidence of record is sparse and does not support the claimant's subjective complaints of debilitating back pain based on the various notes regarding his musculoskeletal and neurological assessments." (*Id.*) The ALJ further stated:

> This claimant has made little or no effort to follow the recommendations of his treating medical sources to effectuate the kind of lifestyle changes that would materially improve his overall medical condition. He has repeatedly been advised to follow a diet, lose weight and increase his exercise but he has not undertaken these recommendations as a means of improving his overall medical condition. His most salient medical problem is his obesity. His other conditions would likely improve if he lost some weight but he has failed to make much of an effort to lose weight as a means of improving his overall medical difficulties.

(Tr. 27-28.)

### B.   Relevant Opinion Evidence

#### 1.   Dr. Harper-Nimock

On September 8, 2011, Dr. Harper-Nimock performed an internal medicine examination of Plaintiff. (Tr. 279.) At the time, Plaintiff had been out of medication for six months. (Tr. 280.) Plaintiff reported that he cooks five times a week, does laundry once a week, and can bathe and dress himself. (*Id.*) The

physical examination showed:

> GENERAL APPEARANCE, GAIT, STATION: The claimant appeared to be in mild distress. Gait abnormal. Cannot walk on heels and toes. He could not squat. Stance abnormal. Used no assistive devices. Needed help changing for exam and getting on and off exam table. Able to rise from chair with difficulty.
> . . .
>
> MUSCULOSKELETAL: Paraspinal muscle spasm was noted of the neck as well as the lower lumbosacral spine. Cervical spine shows decreased flexion, extension, lateral flexion bilaterally, and decreased rotary movement bilaterally. Mild kyphosis. Lumbar spine shows decreased flexion, extension, lateral flexion bilaterally, and decreased rotary movement bilaterally. [Straight leg raising] positive in the seated position. Full [range of motion] of shoulders, elbows, forearms, and wrists bilaterally. Decreased [range of motion] of hips and knees bilaterally. Full [range of motion] of the ankles bilaterally. . . . There is mild effusion of the knees with crepitation. Joints stable and nontender. No redness, heat, swelling. No trigger points noted.
>
> NEUROLOGIC: . . . Strength 5/5 in the upper and lower extremities.
>
> EXTREMITIES: No cyanosis, clubbing, or edema. . . . No muscle atrophy evident.
>
> FINE MOTOR ACTIVITY OF HANDS: Hand and finger dexterity intact. Grip strength 5/5 bilaterally.

(Tr. 280-82.)

Dr. Harper-Nimock diagnosed morbid obesity, degenerative disk disease with radiculopathy, degenerative joint disease, hypertension, diabetes, and nicotine dependency. (Tr. 282.) The prognosis was poor, and the medical source statement provided: "The claimant has moderate to marked limitations for prolonged standing, walking, climbing, pushing, pulling, or heavy lifting." (*Id.*)

7

### 2.   Dr. Ponterio

On December 6, 2011, Dr. Ponterio reviewed Plaintiff's medical records, including Dr. Harper-Nimock's opinions, and prepared an RFC assessment. (Tr. 118-20.) Dr. Ponterio opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of four hours, sit for a total of six hours in an eight-hour work day, and was limited in both of his lower extremities with respect to pushing and/or pulling (including operation of hand and/or foot controls). (Tr. 118.) Dr. Ponterio explained that these limitations were due to effect of obesity, effusion, and crepitation in knees. (*Id.*)

Dr. Ponterio also assessed the following postural limitations: frequent climbing of ramps/stairs, balancing, and stooping; and occasional climbing of ladders/ropes/scaffolds, kneeling, crouching, and crawling. (Tr. 118-19.) These limitations were due to pain, decreased range of motion in the cervical and lumbar spine, and effects of obesity. (Tr. 119.) He further opined that Plaintiff should avoid concentrated exposure to extreme cold and heat, as well as hazards (machinery, heights, etc.), due to effects of obesity, knee effusion with crepitation and decreased range of motion in his spine. (*Id.*)

### C.   Analysis

Plaintiff's first argument is that the ALJ erred in giving limited weight to Dr. Harper-Nimock's opinions, which allegedly suggest greater limitations than the RFC of reduced range of light work. Specifically, Plaintiff argues that (1) the ALJ

ignored several of Dr. Harper-Nimock's findings, (2) the exhibits cited by the ALJ in support of the conclusion that Dr. Harper-Nimock's opinion is "overly broad and incongruent with the totality of the other objective evidence in this record," do not support such a conclusion, and (3) the ALJ erred in giving more weight to the non-examining opinions of Dr. Ponterio.[4]

The Court does not find any error in the ALJ's consideration of Dr. Harper-Nimock's opinions. The ALJ adequately considered those opinions by stating:

> [I]mpartial consultative examiner, Lynn Harper-Nimock, M.D., conducted an examination of the claimant in September 2011 and diagnosed the claimant with the above-listed severe impairments including morbid obesity, degenerative disc disease with radiculopathy, degenerative joint disease, hypertension, diabetes and nicotine dependency. Specifically, Dr. Harper-Nimock recorded the claimant's review of systems (ROS) as predominantly negative including intact sensory, full range of motion (ROM) of both upper extremities and ankles and 5/5 grip and muscle strength in both upper and lower extremities. However, Dr. Harper-Nimock also noted the claimant's subjective complaints of pain, "mild" effusion of the knees, reduced range of motion (ROM) in the lumbar spine and cervical spine, inability to squat, abnormal gait, and the claimant's need for assistance to get on and off the exam table. Ultimately, Dr. Harper-Nimock opined the claimant has "moderate to marked limitation for prolonged standing, walking, climbing, pushing, pulling or heavy lifting" (Exhibit 2F).

---

[4] Plaintiff also makes a cursory argument that the ALJ cannot substitute his judgment for that of the medical and vocational experts, and cannot act as both a judge and a physician. (Doc. 23 at 12.) Because this argument has not been fully developed, it is deemed waived. *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.") (internal citations and quotation marks omitted).

(Tr. 27.)

Plaintiff points out that the ALJ failed to mention the following findings made by Dr. Harper-Nimock: the paraspinal muscle spasm in Plaintiff's neck and lower lumbosacral spine, the positive straight leg raising test in the seated position, the decreased range of motion in his hips and knees bilaterally, his abnormal stance, his inability to walk on heels and toes, the decreased flexion, extension, lateral flexion bilaterally, the decreased rotary movement bilaterally in his cervical and lumbar spine, and that he needed help changing out of his clothes for the exam.  However, the ALJ was not required to discuss every piece of evidence in his decision.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole'").

Moreover, Plaintiff has not shown that Dr. Harper-Nimock's opinions establish greater limitations than the RFC assessment.  *See Robbins v. Colvin*, 2014 WL 6610143, *9 (M.D. Fla. Nov. 19, 2014) ("Dr. Harper-Nimock opined that Mr. Robbins had 'moderate to marked limitations in standing, walking, climbing, or heavy lifting.' . . . Mr. Robbins makes no effort to explain how that opinion conflicts with the ALJ's determination that he can perform a reduced range of light work.").  To the extent Plaintiff suggests that Dr. Harper-Nimock assessed

marked limitations, there is no indication that Plaintiff definitely had marked limitations for prolonged standing, walking, climbing, pushing, pulling, or heavy lifting, or that he should never engage in these activities. *Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 844 (11th Cir. Nov. 14, 2013) (per curiam). Further, Dr. Harper-Nimock's opinions regarding Plaintiff's RFC were not medical opinions because they addressed issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(2). In any event, as a one-time examining doctor, Dr. Harper-Nimock's opinions were not entitled to controlling weight. *See* 20 C.F.R. § 404.1527©.

Plaintiff also asserts that the exhibits cited by the ALJ in support of the conclusion that Dr. Harper-Nimock's opinion is "overly broad and incongruent with the totality of the other objective evidence in this record" do not support such a conclusion. The Court disagrees. For example, Exhibit 3F/5 indicates that Plaintiff's range of motion and muscle strength were grossly intact in December of 2011. (Tr. 290.) Exhibit 7F/8-9 confirms that in December of 2011, Plaintiff's strength was good proximally and distally in both upper and lower extremities, and he denied numbness or tingling in his extremities. (Tr. 359-60.)

Although Exhibits 5F/2-4 and 6F/6 indicate that in March and August of 2012, Plaintiff complained of and/or was diagnosed with low back pain (Tr. 335, 349), "a 'mere diagnosis . . . says nothing about the severity of the condition.'" *Ward v. Astrue*, 2008 WL 1994978, *3 (M.D. Fla. May 8, 2008); *see also*

*Hutchinson v. Astrue*, 408 Fed. App'x 324, 326 (11th Cir. Jan. 18, 2011) (per curiam) ("[P]roof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work."). Also, while it appears that a lumbar spine MRI was ordered in March of 2012 (Tr. 335), there is no indication in the record that it was performed. As the ALJ observed, Plaintiff's treatment appears to be "essentially routine and conservative in nature" (Tr. 26), and "the medical evidence of record is sparse and does not support the claimant's subjective complaints of debilitating back pain based on the various notes regarding his musculoskeletal and neurological assessments" (Tr. 27).

Further, the ALJ was entitled to consider Dr. Ponterio's opinions. *See Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. May 2, 2008) (per curiam) ("The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'"). *See also* SSR 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of nonexamining sources).

The ALJ gave Dr. Ponterio's opinions more weight because they were consistent with the evidence of record in its entirety. The ALJ's conclusion is supported by substantial evidence. As shown above, in December of 2011, Plaintiff's range of motion and muscle strength were grossly intact, and he denied

numbness or tingling in his extremities. (Tr. 290, 359-60.) Additionally, although Plaintiff complained of low back pain and knee pain at subsequent doctor visits, his complaints appear to be sporadic and any treatment has been conservative. (*See* Tr. 349, 351, 386-89.) Also, as stated earlier, it does not appear that a lumbar spine MRI was ever performed even though it was ordered in March of 2012 (Tr. 335).

It should also be noted that although the ALJ gave Dr. Ponterio's opinions more weight, he did not blindly or fully adopt those opinions. The ALJ found, based on the totality of the evidence, that Plaintiff had greater limitations than suggested by Dr. Ponterio. For example, while Dr. Ponterio opined that Plaintiff could sit for about 6 hours in an eight-hour workday, the ALJ limited Plaintiff's sitting to four hours a day. (Tr. 24, 118.) Further, although Dr. Ponterio opined that Plaintiff could climb ladders, ropes, or scaffolds occasionally, the ALJ found that Plaintiff could not engage in such activity. (*Id.*) Additionally, while Dr. Ponterio opined that Plaintiff could balance and stoop frequently, the ALJ found that Plaintiff could engage in such activities only occasionally. (Tr. 24, 119.) Therefore, based on the foregoing, the Court finds that the ALJ properly evaluated the opinion evidence in this case and his RFC assessment is supported by substantial evidence.

Plaintiff next argues that the VE's testimony does not constitute substantial evidence to support the ALJ's decision because the hypothetical question to the

VE did not adequately reflect Plaintiff's limitations assessed by Dr. Harper-Nimock. However, because the ALJ gave limited weight to Dr. Harper-Nimock's opinions and his conclusion is supported by substantial evidence, the ALJ was not required to include the limitations assessed by the doctor in the RFC or the hypothetical question to the VE. *See Crawford*, 363 F.3d at 1161 (stating that the ALJ is not required to include findings in the hypothetical question that the ALJ has properly rejected as unsupported by the record).

Plaintiff also argues that the hypothetical question to the VE should have included a reference to the fact that he was prescribed a walker with a seat on March 27, 2013 for his knee pain (Tr. 390). Although Plaintiff states that the walker was prescribed by his primary care physician (Doc. 23 at 14), it was actually prescribed by a nurse practitioner, a not acceptable medical source. *See* 20 C.F.R. § 404.1513(a), (d); SSR 06-03p. Moreover, Plaintiff has not shown how the prescription for a walker conflicts with the ALJ's RFC and hypothetical question, particularly since the ALJ determined that Plaintiff should alternate his position between sitting and standing/walking every 30 minutes, and the VE testified that the use of a walker for ambulation would not affect Plaintiff's ability to perform the identified jobs (Tr. 90). Therefore, the ALJ's hypothetical question to the VE was complete and his findings were supported by substantial evidence.

Finally, Plaintiff argues that the ALJ erred in weighing his credibility because the ALJ used boiler plate type language in his credibility determination

and improperly relied on Plaintiff's failure to effectuate a lifestyle change as recommended by his physicians. The Court does not find any error.

The Eleventh Circuit has established a three-part "pain standard" that applies when a claimant seeks to establish disability through her own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id*.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that his "pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain," pursuant to 20 C.F.R. § 404.1529 "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote*, 67 F.3d at 1561; *see also* SSR 96-7p (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities").

When a claimant's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p.

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. . . . The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.[5] The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Id.*

"[C]redibility determinations are the province of the ALJ," *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), and "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be

---

[5] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures used to relieve the pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 96-7p.

disturbed by a reviewing court," *Foote*, 67 F.3d at 1562.

In the present case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible for the reasons explained in the decision. (Tr. 27.) These reasons included a lack of "objective lab data or positive clinical/medical findings suggesting that the claimant's impairments reach a level of severity to entirely preclude him from all work," the "essentially routine and conservative" treatment received by Plaintiff, the "sparse" medical evidence of record, which did not support Plaintiff's subjective complaints of debilitating back pain, his "pattern of inconsistent compliance of prescribed treatment/medication," including failure to follow a diet, lose weight, and increase his exercise, his "irregular medical healthcare follow-up," his testimony that he is able to lift/carry 20 pounds, clean, wash dishes, cook, and take short walks for exercise, and the treating records showing, contrary to Plaintiff's testimony, that his blood pressure was controlled with medication. (Tr. 25-28.) In light of the explicit reasons provided by the ALJ for discounting Plaintiff's credibility, the Court rejects Plaintiff's argument that the ALJ's use of boiler plate type language as part of his credibility determination was an error.

Moreover, the reasons provided by the ALJ are supported by substantial evidence. As shown earlier, Plaintiff's treatment, particularly of back pain, has

been somewhat sporadic and conservative. Additionally, Plaintiff's lab results and diagnostic tests were generally normal. (*See* Tr. 286, 294, 296-97, 301-21, 329.) Further, there is substantial evidence in the record that Plaintiff's blood pressure was controlled with medication, and that he was able to take short walks for exercise and perform household chores, such as cleaning, washing dishes, doing laundry, and cooking. (Tr. 70-71, 280, 291, 335 (hypertension was "excellent"), 336 ("Blood Pressure Isolated Elevated Resolved"), 337 ("Mild essential hypertension"), 344, 351, 387.) Finally, the ALJ correctly observed that Plaintiff has been repeatedly advised to follow a diet, lose weight, and/or increase his exercise (Tr. 57, 61, 261, 273, 287, 294, 335, 338, 350, 360, 388 ("weigh[t] loss is the only thing to decrease pain, pressure on his joints")), but as of the date of the hearing his weight was over 380 pounds (Tr. 60).

It should be noted that the ALJ's credibility determination was not based solely on Plaintiff's apparent failure to lose weight and/or exercise more. (*See, e.g.*, Tr. 387 ("morbid obesity . . . is unchanged"), 389 (same).) Rather, Plaintiff's failure to follow the recommendations of his treating sources, which included not just diet and exercise but also medication compliance (*see* Tr. 292, 360), was just one, among several, reasons given by the ALJ in discounting Plaintiff's credibility. Because the ALJ provided explicit reasons supported by substantial evidence for discounting Plaintiff's credibility, the decision is due to be affirmed.

### III. Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. Based on this standard of review, the Court concludes that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question is due to be affirmed.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on April 17, 2015.

_____
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record